*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DENNIS JONES,

       Plaintiff-Appellant,

v

SUBURBAN MOBILITY AUTHORITY FOR REGIONAL TRANSPORTATION, also known as SMART, doing business as SMART TRANSPORTATION,

       Defendant-Appellee,

and

MARK THOMAS SARRO,

       Defendant.

UNPUBLISHED
February 13, 2025
9:49 AM

Nos. 365886; 368237
Oakland Circuit Court
LC No. 2019-174784-NF

Before: RIORDAN, P.J., and O'BRIEN and GARRETT, JJ.

PER CURIAM.

In Docket No. 365886, plaintiff, Dennis Jones, appeals as of right the trial court's April 6, 2023 order that granted the request of defendant, Suburban Mobility Authority for Regional Transportation (SMART), doing business as SMART Transportation, to dismiss the action as a sanction for plaintiff's conduct during arbitration. In Docket No. 368237, plaintiff appeals as of right the trial court's October 11, 2023 order granting plaintiff $50,090 in costs and attorney fees.[1] We reverse in both instances.

---

[1] This Court consolidated the two appeals in *Jones v SMART*, unpublished order of the Court of Appeals, entered October 25, 2023 (Docket Nos. 365886 & 368237).

-1-

## I. BASIC FACTS

Plaintiff initiated this action for the recovery of personal protection insurance (PIP) benefits. Plaintiff alleged that as a passenger on defendant's bus on June 23, 2017, he was injured during a vehicular accident involving defendant's bus and a car driven by defendant Mark Sarro.[2] In his complaint, plaintiff sought medical expenses, lost wages, and replacement and attendant-care services. Plaintiff also was seeking no-fault attorney fees for defendant's unreasonable denial of benefits.

During the litigation, the parties filed various motions in limine. Regarding plaintiff's motions, the trial court ruled:

1.  As to Plaintiff's Motion in Limine (#1) – To Preclude Medical Exam Reports & Other Expert Reports From Admission At Trial Based on Hearsay/Double Hearsay & MRE 403, this motion having previously been ruled upon by the Court in its February 25, 2020 Order, the Court reaffirms and rules that the Motion is GRANTED to the extent that the expert reports are inadmissible at the time of trial, but may be used for other purposes at trial.

2.  As to Plaintiff's Motion in Limine (#2) – To Preclude Medical & Legal Opinion Testimony From Defendant's Adjusters, the Motion is GRANTED to the extent that Defendant's adjusters may not testify to or offer medical opinions or legal opinions in this case, but may testify regarding their knowledge, training, experience, claims handling and what they relied upon in making claims handling decisions without discussing the medical opinions or law in this case for the reasons stated on the record.

3.  As to Plaintiff's Motion in Limine (#3) – To Preclude Defendant From Referencing, Arguing, Or Commenting About Solely Caused By Accident, the Motion is GRANTED in part for the reasons stated on the record only to the extent that Defendant may not argue that Plaintiff must prove that his alleged injuries were solely caused by the subject June 23, 2017 incident. However, Defendant may argue and present evidence and testimony that Plaintiff's alleged injuries and subsequent treatment were not caused by or related to the subject June 23, 2017 incident.

4.  As to Plaintiff's Motion in Limine (#4) – To Preclude Defendant From Referencing, Arguing, Or Commenting About Defense Hired Experts Are "Independent,["] the Motion is GRANTED. The parties, attorneys, and witnesses shall use the term "medical evaluations" per MCR 2.311 and may not refer to medical evaluations as "independent", "IMEs", "DMEs", or "defense" medical evaluations. This ruling does not preclude inquiries into

---

[2] The parties ultimately agreed to dismiss Sarro from the action. As such, our use of the term "defendant" will refer only to SMART.

expert fees for medical evaluations and testimony by Defendant's expert witnesses.

5. As to Plaintiff's Motion in Limine (#5) – To Preclude Character Evidence, the Motion is GRANTED for the reasons stated on the record. However, if Plaintiff or his attorney makes reference to or testifies about any such evidence, including but not limited to his prior and subsequent criminal convictions and acts, Defendant may seek to introduce such evidence or testimony.

The trial court entered a separate order addressing defendant's motions in limine and ruled as follows:

1. As to Defendant's Motion in Limine (#1) For Offer Of Proof Re Causation And Precluding Evidence/Testimony Of "Potential Expert" Or Unnamed Expert Witnesses, the motion is GRANTED in part as follows:

   a. The "potential experts" listed in Plaintiff's witness list are barred . . . .

   b. The Court's prior ruling set forth in its 3/9/2020 Opinion and Order holding that Dr. Dhillon and Dr. Zamorano are precluded from testifying or offering any opinions or evidence on causation, i.e. that the alleged injuries and treatment are related to the subject bus incident, stands.

2. As to Defendant's Motion in Limine (#2) to Preclude Improper Reference, Testimony, or Evidence Concerning Insurance, the Motion is GRANTED in part. The parties, attorneys, and witnesses are precluded from making reference to or presenting any evidence or testimony about insurance limits.

3. As to Defendant's Motion in Limine (#3) To Preclude Improper Reference, Testimony, Or Evidence Re Claims Of Injury By Anyone Other Than Plaintiff As A Result Of The June 23, 2017 Accident, the Motion is GRANTED. The parties, attorneys, and witnesses are precluded from making any reference, comment, suggestion, argument during opening statements, voir dire, or trial or introducing any evidence or testimony that anyone other than Plaintiff may have been injured or claimed to be injured as a result of the June 23, 2017 accident. Defendant may not argue others were not injured in the June 23, 2017 accident.

4. As to Defendant's Motion in Limine (#4) To Preclude Improper Reference, Testimony, Or Evidence From The Police Report, the Motion is GRANTED. The police report is hearsay and may not be admitted in evidence. However, a police officer who testifies may consult the report to refresh his recollection or the police report may be used (not admitted) for purposes of impeachment. The Court's ruling in Paragraph 3 of this Order also applies to references in the police report about other claims of injury.

5.   As to Defendant's Motion in Limine (#5) To Preclude Plaintiff From Introducing Any Evidence Or Testimony Regarding Payments Of Medical/Allowable Expenses Received By Providers From Other Insurers And Third-Party Payors To Establish That The Fees Charged For Their Products, Services, Or Accommodations Were Reasonable And Customary Under The No-Fault Act, Any Testimony Or Reference That Providers Expect Or Generally Are Paid At The Full Amount Charged, And Any Testimony Re Providers Discussions With Other Providers About Charges, the Motion is GRANTED.

a. Plaintiff may not introduce any evidence or testimony regarding payments received by providers from other insurers and third-party payors for their products, services (including but not limited to medical services), or accommodations incurred for which he is seeking payment of No-Fault PIP benefits;

b. Plaintiff may not introduce any testimony, reference, or comments at trial that any of the respective providers' bills are generally paid at the full amount charged or that providers expect payment of their bills at the full amount charged; and

c. Plaintiff may not introduce any testimony regarding any discussions by providers with other providers in the same area of practice or service to establish the reasonableness of providers' charges for services provided to Plaintiff Dennis Jones in connection with his claims of injury from the subject incident.

6.   As to Defendant's Motion in Limine (#6) to Preclude Improper Evidence, Testimony, or Reference to Prior Settlements, Lawsuits, or Payments to Providers Whose Bills Are Not At Issue, the Motion is GRANTED. The parties, attorneys, and witnesses are precluded from making any reference to or presenting any evidence or testimony about prior/other settlements, lawsuits/proceedings, or payments to providers whose bills are not at issue in connection with Dennis Jones's claim for No-Fault Benefits arising out of the same June 23, 2017 bus incident. The Court's ruling includes but is not limited to any reference, testimony, or evidence regarding Executive Ambulatory Surgical Center or ZMC Pharmacy.

7.   As to Defendant's Motion in Limine (#7) to Preclude Evidence Not Previously Disclosed, the Motion is GRANTED for the reasons stated on the record.

8.   As to Defendant's Motion in Limine (#8) To Preclude Testimony Or Reference That Plaintiff Was Unable To Work As A Result Of Subject Accident, the Motion is GRANTED. Plaintiff, his attorneys, and witnesses are precluded from making any reference, comment or suggestion during opening statements, voir dire, or trial or introducing any evidence or

-4-

testimony that Plaintiff was unable to work as a result of alleged injuries from the subject bus incident.

9. As to Defendant's Motion in Limine (#9) to Preclude Evidence or Testimony and to Bar Claims for Previously Paid (Balance) Bills, the Motion is GRANTED for the reason that Plaintiff is not seeking to recover any balance bills in this case.

On June 6, 2022, the trial court entered a stipulated order that dismissed the case with prejudice because the parties had agreed to binding arbitration. The trial court noted that it was retaining jurisdiction "solely to enforce the terms and conditions of the arbitration agreement and/or to enforce any arbitration decision/award." The arbitration panel would consist of an arbitrator selected by plaintiff, an arbitrator selected by defendant, and a "neutral" arbitrator on which both parties agreed.

In the arbitration agreement, the parties also agreed to, *inter alia*, the following items:

- plaintiff will not request or seek attorney fees, interest, costs, case evaluation sanctions;

- the circuit court will retain jurisdiction for purposes of enforcement of the terms and conditions of the agreement and any award or decision;

- the parties will abide by the rulings of the circuit court, and those rulings "shall apply to and be enforceable for purposes of the Arbitration proceedings";

- plaintiff can use his experts' testimony, but the use is subject to the circuit court's prior opinion and orders;

- the arbitrators are not bound by the rules of evidence except to the extent the circuit court made evidentiary rulings;

- the parties are to submit arbitration summaries at least seven days before the arbitration hearing date;

- the arbitrators were not to be provided a copy of the arbitration agreement; and

- plaintiff is to execute the arbitration agreement within 14 days after the circuit court's dismissal of the case.

Plaintiff in his arbitration summary, which he submitted to the arbitrators on March 17, 2023, in anticipation of a March 24, 2023 hearing, did the following:

- referred to defendant being "self-insured by choice";

- referred to and attached the police report of the accident;

- argued that six other bus passengers were injured from the accident;

- argued that defendant violated MCL 500.3151(2) with regard to the qualification of its expert witnesses;

- argued that plaintiff could not work and was disabled from working because of the accident and attached wage-loss verification forms;

- referred to and attached Dr. Arvinder Dhillon's affidavit and opinions on causation;

- referred to and attached Dr. Lucia Zamorano's deposition and opinions on causation;

- referred to portions of a report authored by defendant's expert, Dr. Nathan Gross;

- referred to an arbitration in a prior related case that was filed by Executive Ambulatory Surgical Center regarding its facility fee bill and argued that the provided had "won" the arbitration;

- argued that the treating physicians have business records from other no-fault insurers paying 90%-94% of the billed amounts for treatment;

- referred to and relied on affidavit of Dr. Todd Kleinstein, which was never previously produced during discovery; and

- sought no-fault interest and attorney fees.

When defendant saw that plaintiff's submission violated many aspects of the trial court's orders that were incorporated into the arbitration agreement, it canceled the scheduled arbitration hearing and moved in the trial court to reinstate the case for it to be dismissed with prejudice under MCR 2.504(B)(1). Defendant argued that all of the mentioned items above constitute direct and clear violations of the trial court's earlier orders and the arbitration agreement itself. Defendant also argued that it was entitled to attorney fees under MCR 1.109(E) on account of plaintiff's signing of the noncompliant arbitration summary.

At the motion hearing, defense counsel reiterated her request for dismissal as a sanction for plaintiff's conduct. Counsel stated that if they were sent back to arbitration, she had about 12 requirements for that to occur, including replacing the neutral arbitrator. But counsel did not want to waste the court's time by reading all of the requirements because she contended that going back to arbitration even with these conditions would be ineffective under the circumstances. The trial court granted defendant's motion, reinstated the case, and dismissed it with prejudice. Regarding defendant's request for attorney fees and costs, the trial court instructed defendant to file a separate motion.

Consistent with the trial court's direction, defendant subsequently moved for the award of costs and attorney fees. Defendant sought $4,138.75 in costs and $70,520 in attorney fees for plaintiff's filing of the arbitration summary. Plaintiff responded, in pertinent part, that the arbitration contract does not allow for the recovery of costs and attorney fees and that many of the costs and fees were unreasonable or not recoverable in any event.[3] In reply, defendant said that its arbitrator had agreed to remove his $750 arbitration fee.

At the hearing on defendant's motion for costs and fees, plaintiff's counsel offered the following excuse for the composition of his arbitration summary:

> [T]he summary was the only thing that we filed and it was basically the case evaluation summary. We forgot that this was a non-standard arbitration -- terms. We didn't apparently look at the arbitration agreement and filed it by mistake.

In a written opinion and order, the trial court awarded defendant $1,440 in taxable costs. Regarding the request for attorney fees, the court noted that it had sufficient evidence to determine the amount without holding an evidentiary hearing. And after analyzing the factors from *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008), the trial court found that the reasonable rates for the two attorneys that performed worked on the case was $300 and $200 per hour, respectively. The trial court then deducted many claimed hours for a variety of reasons, which resulted in a total of hours for the lead attorney being 97.5 hours and 97.0 hours for the secondary attorney. This resulted in a total attorney fee of $48,650. Therefore, the trial court awarded a total of $50,090 to defendant, with plaintiff and plaintiff's counsel being jointly and severally liable.

These appeals followed.

## II. STANDARDS OF REVIEW

This Court reviews a trial court's decision to impose the sanction of dismissal for an abuse of discretion. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). This Court also reviews a trial court's decision to award costs and attorney fees for an abuse of discretion. *Keinz v Keinz*, 290 Mich App 137, 141; 799 NW2d 576 (2010). A court abuses its discretion when it selects an outcome falling outside the range of reasonable and principled outcomes. *Maldonado*, 476 Mich at 388. However, the proper interpretation and application of court rules is a question of law this Court reviews de novo. *ISB Sales Co v Dave's Cakes*, 258 Mich App 520, 526; 672 NW2d 181 (2003). The proper interpretation of a contract also is reviewed de novo. *Holland v Trinity Health Care Corp*, 287 Mich App 524, 526; 791 NW2d 724 (2010).

## III. DISMISSAL AS A SANCTION

---

[3] Plaintiff also argued that the requested fees were not reasonable, but the reasonableness of the fees are not at issue in this appeal.

In Docket No. 365886, plaintiff argues that the trial court erred when it dismissed his case as a sanction under MCR 2.504(B)(1). We agree.[4]

Defendant had moved for dismissal of plaintiff's claims under MCR 2.504(B)(1) on account of his purported failure to follow the trial court's orders during the arbitration proceedings. MCR 2.504(B)(1) provides:

> *If a party fails to comply with these rules or a court order*, upon motion by an opposing party, or sua sponte, the court may enter a default against the noncomplying party or a dismissal of the noncomplying party's action or claims. [Emphasis added.]

Defendant's motion was premised on plaintiff's filing of his arbitration summary, which reflected a complete disregard for the restrictions the parties agreed to when they adopted the restrictions the trial court imposed.

Plaintiff on appeal contends that the trial court had no authority under MCR 2.504(B)(1) to dismiss the case because plaintiff did not violate any court order. He maintains that the trial court's orders only pertained to evidence to be admitted at trial and not the arbitration hearing.

We agree with plaintiff that the trial court's orders only pertain to matters before the trial court, and defendant does not point to any language in any order indicating otherwise. Defendant instead relies on the arbitration agreement, which incorporated the court's rulings for the arbitration proceeding, and provides the following:

> The parties stipulate that they will abide by the rulings of Judge Cheryl A. Matthews as set forth in her various opinions and orders entered in Oakland County Circuit Court Case No. 2019-174784-NF, which rulings shall apply to and be enforceable for purposes of the Arbitration proceedings[.]

Thus, there is no question that in the arbitration proceeding, the parties agreed to abide by the trial court's previous rulings. It also is clear that plaintiff breached this covenant by making innumerable references of precluded material in his arbitration summary.[5] But the question is whether this breach qualifies as a violation of a court order. We conclude that it does not.

---

[4] Defendant suggests that this issue is waived because plaintiff did not specifically argue in the trial court that MCR 2.504(B)(1) is inapplicable. However, an issue is preserved for appellate review if it is raised before or decided by the trial court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Here, because the trial court granted defendant's motion for dismissal under MCR 2.504(B)(1), this issue was "decided by" the trial court and thus is preserved for review. See *id*.

[5] Plaintiff on appeal does not seriously contend that his summary complied with the arbitration agreement. At best, plaintiff argues that any violation was not willful.

Plaintiff's actions constituted a clear breach of the arbitration agreement.[6]  However, there is no trial court order requiring compliance with that arbitration agreement.  The mere fact that the arbitration agreement incorporated the trial court's orders does not mean that a breach of the agreement is equivalent to a violation of a court order.  As a result, although it is plain that plaintiff violated the terms of the arbitration agreement by referring to barred topics in his arbitration summary, that breach of the agreement is not a violation of a court order.  Consequently, the trial court abused its discretion when it dismissed plaintiff's action under the authority of MCR 2.504(B)(1).[7]

While MCR 2.504(B)(1) does not authorize the imposition of the sanction of dismissal, the trial court undisputedly retained jurisdiction to enforce the terms of the arbitration agreement.  Thus, the trial court had the authority to enact a remedy for plaintiff's violation of his agreement to abide by the rulings of the court.  Notably, however, the agreement does not specify that dismissal is a possible consequence for a violation of a term of the agreement.  The only reference to plaintiff forfeiting his claims was in the event he failed to timely execute the agreement or failed to appear at the arbitration hearing.[8]  Because this forfeiture remedy was contemplated only for a breach of two certain promises in the agreement, it cannot be said that the parties had agreed that this remedy would apply to other breaches.  See *Greenville Lafayette, LLC v Elgin State Bank*, 296 Mich App 284, 291; 818 NW2d 460 (2012) (stating that a contract is to be interpreted by applying

---

[6] Plaintiff's attorney claimed in the trial court that he was still able to reference these barred pieces of evidence, and it was up to the arbitration panel to then ignore the particular aspects barred by the trial court.  This argument ignores other aspects of the court's orders that plainly also forbid the parties and their attorneys from even *referring to* many of the precluded topics.  Thus, plaintiff's position in the trial court is without merit.

[7] Defendant has not offered any other authority under which the trial court could dismiss the action, except for MCR 1.109(E)(6).  Although, as explained *infra*, that rule is inapplicable under the circumstances in this case.

[8] Even with this reference, the agreement merely mentions that plaintiff's failure to timely sign the agreement "*may* result in forfeiture of his claims." (Emphasis added.)  Thus, it was not a definite outcome.  Of note, plaintiff did not timely execute the arbitration agreement.  But defendant took no steps to enforce that breach and signed the agreement almost a month after plaintiff signed and was ready to attend the arbitration hearing several months later.  Defendant never relied on plaintiff's untimely signing when it sought dismissal.  Accordingly, defendant cannot claim on appeal that dismissal was appropriate because of plaintiff's failure to sign within the prescribed time.  Because the issue was never presented to the trial court, there is no error for this court to correct.  See *Apex Laboratories Int'l Inc v Detroit (On Remand)*, 331 Mich App 1, 10; 951 NW2d 45 (2020) (noting that this Court is an error-correcting court).  In other words, it is not appropriate for this Court to speculate how the trial court would have exercised its discretion on defendant's request for a dismissal based on plaintiff's failure to timely execute the arbitration agreement.  In any event, the exercise of that discretion to dismiss seems highly doubtful given that defendant took no issue with plaintiff's late execution of the agreement and up until a few days before the scheduled March 24, 2023 arbitration hearing, had planned to go forward with that hearing.

its plain language); Willison, Contracts (4th ed), § 31:7 (stating that contracts can only be implemented beyond their express language when that is indispensable to effectuate the intention of the parties). Consequently, we conclude that dismissal was not a viable remedy for the court to consider under MCR 2.504(B)(1), and we reverse.

## IV. ATTORNEY FEES AS A SANCTION

In Docket No. 368237, plaintiff argues that the trial court erred by awarding attorney fees to defendant because MCR 1.109(E), the authority the court relied upon, is inapplicable. We agree.[9]

Defendant moved for sanctions in the form of attorney fees under MCR 1.109(E)(5) and (6), which the trial court granted. Those provisions state:

> (5) *Effect of Signature*. The signature of a person *filing a document*, whether or not represented by an attorney, constitutes a certification by the signer that:
>
> (a) he or she has read the document;
>
> (b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and
>
> (c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
>
> (6) *Sanctions for Violation*. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages. [Emphasis added.]

Thus, under MCR 1.109(E)(6), sanctions are appropriate when, among other things, the party had no reasonable basis to believe that the facts underlying the party's legal position were true or the party's legal position was devoid of arguable legal merit. See also *Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 589; 884 NW2d 587 (2015).

---

[9] As with the previous issue, defendant argues that this issue similarly is waived because plaintiff did not specifically argue in the trial court that MCR 1.109(E) is inapplicable. However, we again conclude that because the trial court granted defendant's motion on the basis of MCR 1.109(E), this issue is preserved for review because it was "decided by" the trial court. See *Glasker-Davis*, 333 Mich App at 227.

-10-

However, on its face, this rule only applies to documents that have been "filed," i.e., documents that have been filed with the trial court. See MCR 1.109(C) (describing filed documents as being "filed with the court"); *New Covert Generating Co, LLC v Covert Twp*, 334 Mich App 24, 90; 964 NW2d 378 (2020) (describing MCR 1.109(E) as applying to "document[s] filed with the court"). The arbitration agreement in this case was not filed with the trial court. Rather, it was submitted to the arbitration panel. As a result, the signing of the arbitration document—no matter how much that document clearly violated the terms of the arbitration agreement—cannot constitute a violation of MCR 1.109(E)(5), which makes MCR 1.109(E)(6) inapplicable for imposing sanctions. Consequently, as a matter of law, the trial court erred by awarding attorney fees under this court rule.

Defendant suggests on appeal that the trial court could award attorney fees under the court's inherent authority, independent from any court rule.[10] Under the "American rule" with regard to the recovery of attorney fees, "attorney fees ordinarily are not recoverable unless a statute, court rule, or common-law exception provides to the contrary." *Ayotte v Dep't of Health & Human Servs*, 337 Mich App 29, 48; 972 NW2d 282 (2021). But "[a]n exception to the American rule is the trial court's inherent authority to sanction a litigant or attorney for misconduct by assessing attorney fees." *Id*. The purpose of imposing such sanctions "is to deter parties and attorneys from filing documents or asserting claims and defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose." *Id*. at 48-49 (quotation marks and citation omitted). Also, the purpose of the inherent authority is "to control the movement of cases on its docket." *Banta v Serban*, 370 Mich 367, 368; 121 NW2d 854 (1963); see also *Maldonado*, 476 Mich at 376 (stating that the inherent power exists so courts can "*manage their own affairs* so as to achieve the orderly and expeditious disposition of cases") (emphasis added). However, we have doubts that a court's inherent authority to sanction litigants would be applicable in this instance because the misconduct at issue here occurred at the arbitration proceeding, not in the trial court. In other words, the trial court would be imposing sanctions to help manage the affairs of the arbitration panel, not the trial court itself.

Indeed, this Court came to a similar conclusion in *Ayotte*. In that case, the circuit court, while sitting as an appellate tribunal from an administrative proceeding, awarded attorney fees as a result of the defendant's purported misconduct at the administrative hearing. *Ayotte*, 337 Mich App at 34-35. We questioned whether the circuit court had inherent authority to sanction since the alleged sanctionable misconduct did not occur in the circuit court. *Id*. at 49. We stated that "[t]o the extent that the circuit court awarded attorney fees on the basis of its inherent authority to sanction misconduct, the court abused its discretion." *Id*. Thus, following the reasoning of *Ayotte*, we decline to affirm the trial court's award of attorney fees on the basis of that court's inherent authority.

We also reverse the trial court's award of costs to defendant. The trial court awarded costs to defendant because it was a prevailing party when the court dismissed the case. See MCR 2.625(A)(1) ("Costs will be allowed to the prevailing party in an action . . . ."). Because we are

---

[10] An appellee may argue alternate grounds to affirm without filing a cross-appeal. *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 713 n 3; 909 NW2d 890 (2017).

-11-

reversing the trial court's order of dismissal, defendant no longer is a prevailing party in the trial court, and we reverse that award as well.

## V. CONCLUSION

We reverse the trial court's dismissal of plaintiff's action because MCR 2.504(B)(1) is not applicable on account of no court order having been violated. Because defendant no longer is a prevailing party under MCR 2.625(A)(1), we likewise reverse the trial court's award of costs. Finally, we reverse the award of attorney fees because MCR 1.109(E) is not applicable when the signed document at issue (the arbitration agreement) was not filed with the lower court. We remand to the trial court for proceedings consistent with this opinion and do not retain jurisdiction.[11]

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Kristina Robinson Garrett

---

[11] Our opinion is not to be read as dictating any particular path forward for the parties. We decline to address what other remedies or outcomes should occur as a result of plaintiff's flagrant breaching of the arbitration agreement. Our holding is limited only to MCR 2.504(B)(1) and MCR 1.109(E) being inapplicable for the fashioning of a remedy by the trial court.